## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) ANDRE WILSON Pro se, as a
(party of one),

(2) and on behalf of ALL OTHERS
WHO ARE SIMILARLY
SITUATED,

                *Plaintiffs,*

      v.

(1) CITY OF LAWTON,
OKLAHOMA,

(2) JOHN RATLIFF, in his
personal and official
capacity,

(3) STAN BOOKER, in his
personal and official
capacity,

(4) ALAN ROSENBAUM, in
his personal and official
capacity,

(5) HEATHER MOULTON-
SKILES, in her personal and
official capacity,

(6) SANDRA CARL, in her
personal and official
capacity,

(7) JILLIAN ALLISON, in
her personal and official
capacity,

(8) MANUEL MARTINEZ,
in his personal and official
capacity,

(9) MICHAEL ALBERT, in
his personal and official
capacity,

**CIV 24 853 G**

Civil No.:

**JURY TRIAL DEMANDED**

**FILED**

AUG 19 2024

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

Page 1 of 50

Subject to the provisions of this title, "*no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.*"

Mr. Wilson seeks to unveil the deliberate discrimination and unlawful misconduct of public officials, officers, and employees in the City of Lawton (City), regardless of their hiring, election, or appointment status, who willfully neglect their duty and oath in governmental office. This includes violations of state laws, Oklahoma Open Records Act (ORA), Okla. Stat. tit. 51, §§ 24A.1-24A.33, and the Oklahoma Anti-Discrimination Act (OADA), Okla. Stat. tit. 25, Sec. §§ 1101-1706, along with their disregard for state and federal laws enshrined in both the Oklahoma Constitution and the United States Constitution. Additionally, Mr. Wilson aims to present a compelling case of intentional discrimination, coercion, intimidation, and retaliation by local governmental employees conspiring in their personal and official capacity to deprive Plaintiff of rights or privileges before, during, and after he requests to receive reasonable accommodations / modifications and other obligations under Title II of the ADA. The City continues to fail operating its programs, services, and activities so that they are readily accessible to persons with disabilities when the program, service, or activity is viewed in its entirety. These actions are targeted at those attempting to equally participate in or enjoy any benefit, service, privilege, program, facility, or activity provided or administered by the United States including engaging in constitutionally protected activities, such as requesting reasonable accommodations to ensure meaningful access to City programs and activities, and recording municipal court employees, and/or police officers performing their official duties in public spaces in order to "hold governmental officials accountable" and "check abuse of

including the City's Court, Jail, and Prosecutor's Office. This failure has the same practical effects as "outright exclusion". *See Tyler v. City of Manhattan*, (10th Cir.), *Tennessee v. Lane*.

In sum, Mr. Wilson affirms that City Policymakers "knowingly" and "willingly" fail to make reasonable modifications to accommodate individuals with hidden disabilities in City and municipal court policies, law enforcement activities, customs, practices, programs, policies, procedures. Subsequently, Defendants conspired to coerce, intimidate, threaten and retaliate against Mr. Wilson for seeking to assert his rights under the ADA and U.S. Constitution, and to criticize local government officials without fear of "deprivation of liberty and property without due process of law" (*Gonzalez v. Trevino*), while using a recording device to aid his disability. Mr. Wilson claims the City and its departments are considered public entities liable under 42 U.S.C. §§ 1983 and 1985, Title II, Section 504, Tenth Circuit's "Repeated Violations Doctrine", Okla. Stat. Tit. 25, Sec. §§ 1101-1706 as well as both the Oklahoma Constitution and the United States Constitution.

> Including individuals with disabilities among people who count in composing "We the People," Congress understood in shaping the ADA, would sometimes require not blindfolded equality, but responsiveness to difference; not indifference, but accommodation.

> - Justice Ruth Bader Ginsburg,
>
> concurring in Tennessee v. Lane,
>
> May 17, 2004

9.      Upon info and belief, *Sandra Carl (Ms. Carl)* is a resident of Comanche County which is located within the Western District of Oklahoma. During all relevant times described herein she was an employee of the Lawton Public Safety Facility acting under color of law.

10.     Upon info and belief, *Jillian Allison (Ms. Allison)* is a resident of Comanche County which is located within the Western District of Oklahoma. During all relevant times described herein she was an employee of the Lawton Public Safety Facility acting under color of law.

11.     Upon info and belief, *Manuel Martinez (Mr. Martinez)* is a resident of Comanche County which is located within the Western District of Oklahoma. During all relevant times described herein he was an officer of the Lawton Police Department acting under color of law.

12.     Upon info and belief, *Michael Albert (Mr. Albert)* is a resident of Comanche County which is located within the Western District of Oklahoma. During all relevant times described herein he was an officer of the Lawton Police Department acting under color of law.

13.     Upon info and belief, *Caleb Swinford (Mr. Swinford)* is a resident of Comanche County which is located within the Western District of Oklahoma. During all relevant times described herein he was an officer of the Lawton Police Department acting under color of law.

14.     Upon info and belief, *Mario Ozuna (Mr. Ozuna)* is a resident of Comanche County which is located within the Western District of Oklahoma. During all relevant times described herein he was an employee of the Lawton Public Safety Facility acting under color of law.

15.     Upon info and belief, *Mark Floyd (Mr. Floyd)* is a resident of Comanche County which is located within the Western District of Oklahoma. During all relevant times described herein he was an employee of the Lawton Public Safety Facility acting under color of law.

22.     This Court has supplemental jurisdiction over the state claims alleged herein pursuant to 28 U.S.C. § 13679(a).

23.     On July 12, 1990, Congress enacted the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., establishing the most important civil rights law for people with disabilities in our country's history. Animating Principle of the ADA says, "no qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities, of a public entity, or be subjected to discrimination by any public entity." *42 U.S.C. § 12132; see also 28 C.F.R. § 35.130(a).*

24.     The Lawton Public Safety Facility (LPSF) not only accommodates the City's Fire and Police Departments but also serves as the location for the City's Municipal Court, Prosecutor's Office, and adult jail, all falling under the purview of public entities according to Title II of the ADA. Public entities must guarantee that individuals with disabilities who are qualified inmates or detainees in jails, detention and correctional facilities, and community correctional facilities are not excluded from participating in, or denied the benefits of, the services, programs, or activities offered by a public entity, nor subjected to discrimination, because of the inaccessibility or unusability of a facility for individuals with disabilities. *28 C.F.R. § 35.152(b)(1)).*

25.     The term "public entity" means any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government; and the National Railroad Passenger Corporation, and any cummuter authority." *42 U.S.C. § 12131(1).*

The Supreme Court has defined retaliation as an intentional act in response to a protected action. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (2005). Citing *Jackson*, the court in *Gutierrez* underscored the intentional nature of a retaliation complaint: "Retaliation is, by definition, an intentional act. It is a form of "discrimination" because the complainant is being subjected to differential treatment." *Gutierrez*, 2005 WL 2346956, at *5. The complained of matter need not be a complaint; it can be any lawful conduct that an individual engages in connected with a protected right. "The very concept of retaliation is that the retaliating party takes action against the party retaliated against after, and because of, some action of the latter." *Fed. Mar. Bd. v. Isbrandtsen Co.*, 356 U.S. 481, 514 (1958). It carries with it the notion of "getting even." See id. As noted in a 2011 law review article:

> Retaliation is a deliberate action used to send a clear message that complaining is unwelcome and risky. It is employed to instill fear in others who might consider making a complaint in the future. Those with cause for complaining are frequently among the most vulnerable in an institution. Once they complain, they are labeled "troublemakers." Retaliation, and the fear of retaliation, becomes a potent weapon used to maintain the power structure within the institution.

Ivan E. Bodensteiner, The Risk of Complaining—Retaliation, 38 J.C. & U.L. 1, 1 (2011).

29.    Furthermore, Title VI does not include an express provision prohibiting retaliation. Nonetheless, courts, including the Supreme Court, have held that various anti-discrimination statutes contain an implied cause of action for retaliation based on the general prohibition against intentional discrimination. See, e.g., *Jackson*, 544 U.S. at 173 ("Retaliation against a person because that person has complained of sex discrimination is

For Title VI, as discussed elsewhere in this manual, Section 601 prohibits discrimination based on race, color, or national origin, while Section 602 authorizes and directs federal departments and agencies that extend financial assistance to issue rules, regulations, or orders to effectuate Section 601. Under this authority, most federal grant-making agencies have included an anti-retaliation provision in their Title VI regulations. The DOJ regulation provides the following:

> No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by [Title VI], or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subpart.

28 C.F.R. § 42.107(e); see also *Johnson v. Galen Health Insts., Inc.*, 267 F. Supp. 2d 679, 695 (W.D. Ky. 2003) (Title IX anti-retaliation provision cuts to the core of [its] ban on intentional discrimination and is covered by that section's existing cause of action).

Retaliatory behavior needs to be barred irrespective of whether the underlying claim is based on intent or disparate impact. Although one Court of Appeals has found that a private plaintiff cannot pursue a retaliation claim in court based on his or her opposition to alleged disparate impact discrimination, Title VI does not grant recipients a license to threaten individuals or prevent them from bringing disparate impact complaints to the government, which has the ability to pursue disparate impact claims in court and in the administrative process.

**ADA and Local Correctional Institutions Allegations**

31.     Despite City Policymakers' awareness of the noncompliance with Title II of the ADA and their evident deliberate indifference towards individuals with disabilities, ongoing discriminatory behaviors and practices persist with no end in sight as City Policymakers continue to deny individuals their fundamental rights in all departments of local government, including the operating policies of the Lawton Public Safety Facility (LPSF). *See* **MARGIE M. ROBINSON, as the Personal Representative of the Estate of Christina Dawn Tahhahwah, Deceased, v. THE CITY OF LAWTON, OKLAHOMA; [link]** (https://turtletalk.files.wordpress.com/2018/11/1-complaint.pdf).

32.     The City maintain contracts with the Comanche County Detention Center (CCDC), which is currently acting in "bad faith" by denying access to the state's Protection and Advocacy System, the Oklahoma Disability Law Center (ODLC). For more information, *See*: **[KSWO News article]**(https://www.kswo.com/2024/06/20/disability-law-group-sues-comanche-co-commissioners-allegedly-denying-access-ccdc/?fbclid=IwZXh0bgNhZW0CMTEAAR23B9FoHJbvZg2FUX_PQeDgNZm9Wxdy1aPEOlxwNaGIsHnhlV3EOFTarrI_aem_12p408gb3K6xWgsmVykjdw).

33.     The City and the Lawton Police Department (LPD) occasionally engage in official duties with the CCDC and the Comanche County Sheriff's Department (CCSD), as evidenced by their response to a request for assistance during a "hostage situation" in January 2024. *See*: **[KSWO News article]**(https://www.kswo.com/2024/01/18/new-details-emerge-over-hostage-situation-comanche-county-detention-center/)

38.    City Policymakers have not adopted or met the legal requirements under the ADA for grievance procedures to provide "prompt" and "equitable" resolutions to address disability-related complaints for inmates and visitors at the LPSF. *See* (§35.107)

39.    As stated in the ***Southwest ADA Center Practical Guide 2023*** (http://www.southwestada.org/html/publications/Title2/ADA-access-inmates-visitors.pdf), "*All correctional institutions should ensure that the provision of accommodations, when needed, is given to inmates with disabilities in order to prepare and process a request or an appeal. An example could be modifying requirements, such as the rules that require requests and appeals to be in writing and on specific forms, in order to account for and create access for inmates with disabilities that affect their communication.*"

40.    Under "How Ableism Interferes with Program Access," ableism is the discrimination of and social prejudice against people with disabilities based on the belief that typical abilities are superior resulting in societies and systems that are built and operate in favor of able-bodied people. To this day societies are simply not built for those who function physically or emotionally or cognitively differently from what society perceives as the vast majority of people. These groups of people are less able to function in society due to attitudinal, architectural, educational, communications, economic (employment), physical health and psychiatric health care barriers. The Justice system, including corrections, is not an exception to this discrimination. To address program access the system must identify the unconscious or conscious failure by that system to take into account the spectrum of human needs and abilities as discriminatory. *See*: **[Southwest ADA Center Practical Guide]** (http://www.southwestada.org/html/publications/Title2/ADA-access-inmates-visitors.pdf).

**ADA and State Law Allegations Against Local Correctional Institutions**

44.    Likewise, OKLAHOMA CONSTITUTION, ARTICLE II - BILL OF RIGHTS states: "SECTION II-7 *Due process of law.* No person shall be deprived of life, liberty, or property, without due process of law."

45.    Moreover, SECTION II-9 *Excessive bail or fines - Cruel or unusual punishment.* "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted."

46.    Further, SECTION II-13 *Imprisonment for debt.* "Imprisonment for debt is prohibited, except for the non-payment of fines and penalties imposed for the violation of law."

47.    SECTION II-18 *Grand jury.* This section states, "or such grand jury shall be ordered convened upon the filing of a verified application by the Attorney General of the State of Oklahoma who shall have authority to conduct the grand jury in investigating crimes which are alleged to have been committed in said county or involving multicounty criminal activities; when so assembled such grand jury shall have power to inquire into and return indictments for all character and grades of crime."

48.    SECTION II-19 *Trial by jury.* The right of trial by jury shall be and remain inviolate, except in civil cases wherein the amount in controversy does not exceed One Thousand Five Hundred Dollars ($1,500.00), or in criminal cases wherein punishment for the offense charged is by fine only, not exceeding One Thousand Five Hundred Dollars ($1,500.00). Provided, however, that the Legislature may provide for jury trial in cases involving lesser amounts. Juries for the trial of civil cases, involving more than Ten Thousand Dollars ($10,000.00), and felony criminal cases shall consist of twelve (12) persons. All other

53.    (2023) Oklahoma Statutes *Title 21. Crimes and Punishments §21-1482. Threats constituting extortion.* "Fear such as will constitute extortion, may be induced by a threat, either: 1st. To do an unlawful injury to the person or property of the individual threatened, or to any relative of his or member of his family; or, 2nd. To accuse him, or any relative of his or member of his family, of any crime; or, 3rd. To expose, or impute to him, or them, any deformity or disgrace; or, 4th. To expose any secret affecting him or them."

54.    (2023) Oklahoma Statutes *Title 21. Crimes and Punishments §21-1483. Extortion or attempted extortion.* "Every person who extorts or attempts to extort any money or other property from another, under circumstances not amounting to robbery, by means of force or any threat such as is mentioned in Section 1482 of this title, upon conviction, shall be guilty of a felony. A conviction for extortion is punishable by imprisonment in the State Penitentiary for a term not exceeding five (5) years. A conviction for attempted extortion is punishable by imprisonment in the State Penitentiary for a term not exceeding two (2) years."

55.    (2023) Title 21. Crimes and Punishments *§21-1484. Extortion under color of official right.* "Every person who commits any extortion under color of official right, in cases for which a different punishment is not prescribed by this code, or by some of the statutes, which it specifies as continuing in force, is guilty of a misdemeanor."

56.    (2023) Oklahoma Statutes *Title 21. Crimes and Punishments  §21-1485. Obtaining signature by extortion.* "Every person, who by any extortionate means, obtains from another his signature to any paper or instrument, whereby, if such signature were freely given, any property would be transferred, or any debt, demand, charge or right of action created, is punishable in the same manner as if the actual delivery of such property or payment of the amount of such debt, demand, charge or right of action were obtained."

walkers from inmates and denied them accommodations, services and programs in violation of the Americans with Disabilities Act (ADA).[7]

According to John Wodatch, the head of the Disability Rights Section of the U.S. Department of Justice's Civil Rights Division from its inception in 1995 until 2011, the majority of the thousands of annual complaints the office received were from inmates with disabilities, and nearly all of them were substantiated.[8] Due to these discriminatory practices, inmates with disabilities can end up living in a "prison within a prison."[9]

Additionally, about 85 percent of incarcerated youth have a disability.[10] These youth with disabilities (often undiagnosed) are a unique and particularly vulnerable group in juvenile facilities. They are referred to the juvenile justice system earlier than youth without disabilities and they are referred for more serious crimes and experience shorter survival times before they recidivate.[11] States and local governments have increasingly turned to their correctional systems to take on tasks that they are not necessarily equipped or educated to handle. These systems must meet the challenges presented by the inmate population with various disabilities to ensure basic human, constitutional, and civil rights. This includes compliance with the ADA, which prohibits discrimination against people with disabilities, and incorporating ADA best practices that offer equal access and opportunity to services, activities, privileges, and programs.

Visitors with disabilities often face barriers when trying to visit an inmate because the facility fails to accommodate their disabilities. Barriers include a lack of accessible parking, inaccessible entrances and visitation areas, and a lack of effective communication or modifications of policy and accommodations that would make the facility accessible to the visitor.

63. Mr. Wilson alleges that Policymakers of the City have been alerted sufficiently of the deprivations of federal rights committed by its employees, supervisors, and municipal officials regarding the unequal treatment of minorities with disabilities, including Plaintiff.

64. Mr. Wilson alleges Policymakers had "actual knowledge" of City employees acting in "bad faith," violating Plaintiff's rights, while Policymakers, department heads and supervisors acquiesced in the violations by fostering inadequacies in the City's adopted Title II ADA policies via "ADMINISTRATIVE POLICY 3-35 EMPLOYEE OR APPLICANT REQUESTS FOR ADA ACCOMMODATION" and City Code "13-1-101."

65. Mr. Wilson provided the City with Title II training materials from the DOJ to safeguard the rights of individuals with disabilities and assist in mitigating liability for the City.

66. Further, Mr. Wilson gave City Policymakers "actual and constructive notice" that the City's actions and inactions to adopt and establish Title II reasonable regulations under the ADA would certainly result in constitutional violations of individuals with disabilities.

67. What's more, the City Policymakers "consciously" or "deliberately" chose to disregard the risk of harm by failing to supervise, train, educate, and adopt federal Title II administrative regulations under the ADA after timely complaints and notifications by Plaintiff.

68. The City Policymakers continue to treat Mr. Wilson and individuals with unseen disabilities (cognitive, emotional, and mental) differently than those with physical disabilities.

69. The City of Lawton currently operates the Lawton Access Board (LAB), formed after the federal lawsuit *Joseph Harper & Vivian Wheeler v. City of Lawton* (case # CIV-12-841-F) in the Western District of Oklahoma. LAB designs parks, sidewalks, and ramps for individuals with physical disabilities.

were permitted to deny my lawful request for reasonable accommodation. This denial was compounded by a deliberate act of humiliation, where my request was scrawled on a torn sheet of paper, degrading its importance. To further exacerbate the injury, the clerks (all white) arrogantly dictated to me what they believed I should be able to read, based solely on their subjective interpretations, disregarding my actual needs.

74.    This conduct not only underscores a blatant disregard for my rights as an individual with a disability but also reflects a deeper systemic issue of race discrimination, leaving me vulnerable and unprotected under the law.

75.    The Feb. 25, 2014 - present, ADA EXECUTIVE SUMMARY TO COUNCIL did not include "Self-Evaluation Reports" for City policymakers, particularly those that address unseen disabilities. This oversight denied individuals with cognitive, emotional, and mental disabilities protection against discrimination, hindering their ability to file grievances as both citizens and employees, and neglected necessary modifications to City policies and practices. Consequently, this failure persists today, undermining equal access to programs, services, and activities by treating individuals with unseen disabilities differently than those with physical disabilities. This may violate the Oklahoma Anti-Discrimination Act, ADA, Section 504, as well as the Oklahoma and United States Constitutions.

76.    Mr. Wilson alleges that City Policymakers breached their duty to provide reasonable accommodations / modifications for individuals with disabilities, as required by Title II and Section 504. This failure occurred during City Council meetings and interactions with the City Prosecutor and Municipal Court, ultimately denying Plaintiff "meaningful access" to programs, services, and activities at City Hall and Lawton Public Safety Facility.

- [Saint Louis University News](https://www.slu.edu/news/2023/december/andres-gallegos-obituary.php)

- [National Council on Disability](https://www.ncd.gov/2023/12/04/ncd-colleagues-remember-andres-gallegos/)

81.    Mr. Wilson was deeply heartbroken and depressed, lacking legal training, which led to a panicked attempt to file a motion to intervene on behalf of the Department of Justice (DOJ). Defendants argued that the motion was improperly filed, resulting in the Judge dismissing Mr. Wilson's 2022 lawsuit (Andre Wilson v. City of Lawton) without prejudice due to Plaintiff's failure to meet the procedural requirements.

**ADA and Constitutional Violations 2023**

82.    Although Plaintiff's 2022 lawsuit (Andre Wilson v. City of Lawton) was dismissed without prejudice, the City of Lawton has persisted in violating the ADA with impunity across various departments, including the Lawton Police Department (LPD), City Municipal Court, Prosecutor's Office, and Jail housed in the Lawton Public Safety Facility.

83.    Furthermore, Mr. Ratliff insisted that Plaintiff use the City's online portal for open records requests, warning that failure to do so may result in increased processing times.

84.    Throughout August 2023, City Manager John Ratliff repeatedly attempted to compel Plaintiff, a member of the Lawton Council of the Blind (LCB), to use the City's online Open Records Program. Plaintiff, who has visual impairments, faced significant barriers because the City's online programs fail to comply with the Web Content Accessibility Guidelines (WCAG) Version 2.1, Levels A and AA, and Title II of the ADA, which mandate accessible digital content for individuals with disabilities.

89.    On August 23, 2023, Legal Assistant Crystal John-Turner emailed me copies of small print versions of "Administrative Policy 1-13" *Open Records Request Response Policy*, *Article A-1-2A Miscellaneous*, and "Chapter A-2 Administration" *Article A-2-3-5-331 Library Fines and Fees* in an attempt to justify their fines and fees. However, I had already been informed by members of the City Council that the City Manager can arbitrarily waive these fines and fees for certain community persons although it was written in the emailed I received that requested records would be released "once the invoice has been paid in full." This practice highlights a systemic problem of differential treatment under the law and City policies, potentially violating the Fourteenth Amendment of the U.S. Constitution.

90.    Mr. Wilson received multiple emails from Legal Assistant Crystal John-Turner and LPD employee Mario Ozuna, stating, "Payment Past Due" and "If payment is not received within 30 days of your invoice date, your request will be automatically closed for non-response." This correspondence appears to be an act of intimidation and retaliation, aiming to discourage Plaintiff from exercising his rights under state and federal law to review records and make complaints about potential constitutional violations by City officials.

91.    On November 21, 2023, Mr. Wilson emailed City Manager John Ratliff and City Policymakers under the title, "*Subject: Urgent Request for Department of Justice Guidance on ADA Implementation and Discrimination,*" addressing discriminatory treatment faced by individuals with disabilities during police encounters. This communication specifically referenced an incident on December 29, 2022, involving Mr. Wilson's disabled son and his friends during a traffic stop.

especially as his 7-year-old son was about to get off the bus in the City of Cache, 15 miles west of Lawton, with no one at home to meet him. Throughout and after the arrest, Mr. Wilson expressed discomfort about his positioning in the back seat of the patrol unit and the tightness of the handcuffs. However, no LPD officer attempted to check the cuffs, address his discomfort, or investigate the matter.

94.    Upon arriving at the Lawton Public Safety Facility (LPSF), Mr. Wilson encountered a troubling "lack of reasonable accommodations" especially following dehumanizing questioning by Correctional Officers. There were no visible communications on how to contact an on-duty "ADA Coordinator," file disability "grievances," or obtain necessary "auxiliary aids," or "services" outside of regular business hours. Despite disclosing his medical diagnosis, LPSF employees and supervisors failed to comply with the ADA by denying Mr. Wilson access to a CPAP and Bi-PAP device, depriving him of "critical medical care" as mandated by Title II of the ADA. Additionally, Mr Wilson's medical privacy was breached when he was questioned about "private health information (PHI)" in front of City and jail employees and other inmates, including inquiries regarding diagnosed disabilities, HIV status, suicidal thoughts, Hepatitis status, and other communicable diseases in violation of "Health Insurance Portability and Accountability Act of 1996 (HIPPA)."

95.    ***On Feb. 1, 2024, at approximately 5 PM***, Municipal Judge Nathan Johnson ruled to keep Mr. Wilson incarcerated due to his inability to afford the exorbitant $1200 plus fees cash bond, which functioned as a form of "taxation by citation." This ruling effectively denied Mr. Wilson freedom "due to an inability to pay," despite his plea of innocence and no prior history of court absences. City Policymakers, department heads, and supervisors "knowingly"

Given this personal connection, Mr. Wilson firmly believes that any claims he makes against the LPD or its officers should not be conducted or overseen by Captain Mason due to the inherent conflict of interest. Despite Mr. Wilson's explicit request for fair and impartial investigations, Mr. Ratliff and the LPD continue to assign Captain Mason to oversee his complaints. Mr. Wilson now fears retaliation from local government as he "receives increased scrutiny" from City officials after filing a federal lawsuit under the ADA and when attempting to speak about the issues at public meetings.

98.    *On February 20 and 21, 2024*, Mr. Wilson endured "retaliation" and "unprofessional behaviors" from Allyssa McDonald, who is not of African decent, of the Lawton Prosecutor's Office and other employees in the City's Human Resource Office while attempting to obtain the contact email for City Prosecutor, Alan Rosenbaum. These actions further illustrate the ongoing discrimination Mr. Wilson faces as a victim of government disability and race discrimination.

99.    *On February 22, 2024*, Mr. Wilson attended a town hall hosted by newly elected Ward 7 Councilwoman Sherene L. Williams at the Leslie Powell Gallery in downtown Lawton. Here, Community Services Director Charlotte Brown outlined her office's divisions, including the Planning and Neighborhood Services and the Housing Building Division, which are fully funded by federal grants. During the session, an elderly couple raised concerns about an inaccessible sidewalk in front of their home, which hindered their public travel despite their reliance on disability assistance equipment.

100.    Ms. Brown explained that, according to City Regulations in 20-1-103 - Duty to Keep Sidewalks Accessible - Liability for Injuries, while the sidewalk is publicly accessible,

municipal court clerk about meeting City Prosecutor Alan Rosenbaum, Mr. Wilson was instructed to sign in at her window by 1:45 PM. Thereafter, Mr. Wilson approached LPD Clerk Mario Ozuna on the police side to discuss receiving documents in "large print due to a visual disability" and inquired about the fee schedule for prints from Open Records Act (ORA) requests. Mr. Ozuna clarified that digital reproduction was charged not by them but by the City. When Mr. Ozuna asked if Mr. Wilson had informed the recipients of his ORA requests of his need for larger print, Mr. Wilson explained his disability and the challenges faced without such accommodation. Despite repeated requests to speak with an ADA Coordinator at the LPSF, Mr. Wilson was unjustly denied this opportunity by Mr. Ozuna and others, further exacerbating the discrimination faced.

105.    *On March 5, 2024, at approximately 2 PM*, Mr. Wilson met with Mr. Ozuna again to inquire about any new developments since the morning discussions. Mr. Ozuna mentioned "waiting for a response from the City." Mr. Wilson emphasized the urgency of speaking with an ADA Coordinator to receive reasonable accommodations before meeting with Prosecutor Rosenbaum at 2 PM. Despite repeated requests for written communications detailing the efforts to secure ADA accommodations and to include Mr. Wilson's email in the correspondence, Mr. Ozuna declined to comply, suggesting that Mr. Wilson check in with him post-meeting with the Prosecutor. Mr. Ozuna's refusal to provide reasonable accommodations constitutes a violation of Title II and Section 504 of the ADA, further victimizing Mr. Wilson as a target of government disability and race discrimination.

106.    *On March 5, 2024, at approximately 2:30 PM*, the conduct of Judge Nathan Johnson and Prosecutor Alan Rosenbaum unmistakably exemplified a "deliberate indifference"

jury, further demonstrating his abuse of power despite being aware of Mr. Wilson's diagnosis of an unseen disability. His unwavering insistence on imposing his authority, rather than ensuring a fair and just legal process, undermines the principles of due process and individual autonomy, particularly for individuals with disabilities, perpetuating the egregious exploitation of fines and fees over the rights of individuals with disabilities under Title II of the ADA.

109.    Further, Mr. Rosenbaum refused to engage in a meaningful "interactive process." Under the ADA's implementing regulations, 28 C.F.R. Part 35, and his dismissal of Mr. Wilson's legitimate ADA compliance concerns indicate a "systemic failure" within the Lawton Prosecutor's Office. The failure to provide modifications to programs, policies, and procedures, to accommodate individuals with disabilities after a reasonable request under Title II policies concerning reasonable accommodations from both the City and the Public Safety Facility through the Oklahoma ORA, can be consider deliberate indifference. Mr. Wilson received the City's "Administrative Policy 3-35 Employee or Applicant Request For ADA Accommodation," which, unfortunately, was not relevant to his ORA requests for inquiries about Title II policies that remains outstanding. This failure not only undermines the principles of equality and accessibility for individuals living with disabilities but also perpetuates "systemic discrimination" against marginalized communities living within the City.

110.    In a disturbing act of manipulation, Mr. Rosenbaum not only denies Mr. Wilson's disability rights under Title II of the ADA but also exploits Mr. Wilson's cognitive disability by refusing to acknowledge its existence.

111.    This calculated move to undermine Mr. Wilson's rights reveals his intent to take advantage of Mr. Wilson's vulnerability. Mr. Rosenbaum boldly declared Mr. Wilson ineligible

118.   *On March 5, 2024, at approximately 3:00 PM*, Mr. Wilson found himself in a distressing situation where City employees and supervisors intentionally dismissed and ultimately denied his requests for reasonable accommodations under the ADA.

119.   Despite clearly articulating the need for documents in "large print" and additional "services" to understand the court proceedings, Mr. Wilson's ADA requests were callously disregarded.

120.   Adding to the gravity of the situation, Judge Nathan Johnson was present in the office doorway of the Director of the Municipal Court, Jillian Allison, while participating in the unprofessional correspondence that led to the denial of Mr. Wilson's rights. This unsettling scene unfolded in full view of the entire office, as two court clerks, Heather Skiles and another individual who preferred to be identified as Sandy, engaged with the judge and the Director of the Municipal Court.

121.   Their conduct was displayed by "disparaging remarks" and evident attitudinal barriers, highlighted by their public inquiry into the nature of Mr. Wilson's disability when he sought to make accommodation requests under the ADA. Such behavior not only demonstrates a flagrant lack of professionalism with citizens' protected health information (PHI) but also undermines the integrity of the local judicial system.

122.   In a disrespectful manner, the clerks wrote down Mr. Wilson's "large print request on torn paper" and condescendingly implied that if he could read that, he could read anything.

CDT (https://www.kswo.com/2024/08/07/watch-7news-2024-lawton-mayoral-debate/?
fbclid=IwY2xjawEiAmxleHRuA2FlbQIxMAABHUycUY9ZKXedEbEodW1RnP6py-
i7opQdnDlBr2gskY_rYm12vG_S0mJ8KQ_aem_xj3Az-0zLqM098Hw_b-B9Q).

130.    The City of Lawton and Mayor Stan Booker blatantly failed to uphold Mr.

Wilson's First Amendment right to criticize government officials, as local government

officials conspired and retaliated against dissenting voices, including Mr. Wilson in a manner

similar to the case of *Gonzalez v. Trevino*.

131.    The amendment to Council Policy 1-6, signed just one day before the Lawton

City Council Meeting on July 10, 2024, was a calculated move designed to target individuals

like Mr. Wilson, who openly criticize local government officials and policies. By altering the

rules for "Audience Participation," the City aimed to suppress dissenting voices, directly

infringing upon Mr. Wilson's First Amendment rights to speak freely and to petition the

government for a redress of grievances.

132.    This policy change was not a neutral adjustment but an intentional act of

retaliation against those, like Mr. Wilson, who seek to hold the government accountable—a

clear violation of his constitutional protections.

133.    ***On July 23, 2024, at approximately 2:15 PM***, the impact of this amendment

became evident during the Lawton City Council Meeting. When Mr. Wilson sought to

exercise his right to "criticize local government officials and policies," Mayor Stan Booker

blocked his attempt to speak at City Hall.

141.    *On August 13, 2024,* in a final and egregious act of disregard toward Mr. Wilson, local government officials, most notably Mayor Booker, willfully failed to acknowledge Mr. Wilson by name despite his earnest attempts to engage with the City.

142.    Mr. Wilson, who had traveled from a neighboring city, took the necessary steps to file an Audience Participation form, with the assistance of the City Clerk, who dutifully date-stamped and noted that Mr. Wilson would be called upon last, as per his request.

143.    Yet, in a stark display of intentional government discrimination, Mr. Wilson was never granted the opportunity to speak.

144.    Instead, Mr. Robert Ratcliffe was inexplicably the first to address the audience, voicing the very concerns Mr. Wilson intended to raise.

145.    These concerns focused on the unlawful and clandestine amendment to Audience Participation procedures—a blatant violation of the Oklahoma Open Meetings Act (OMA).

146.    This abrupt and secretive change, signed into the City Codes on July 9, 2024—a day before the City Council Meeting on July 10, 2024—was a calculated effort to suppress public participation and deprive Mr. Wilson, along with similarly situated individuals, of their constitutionally protected right to be heard in a public forum.

147.    As a direct result of these actions, Mr. Wilson endured significant frustration, embarrassment, and humiliation.

148.    This lack of oversight and deliberate exclusion not only invalidated Mr. Wilson's legitimate concerns but also further eroded public trust in local governmental institutions.

balancing, concentrating, thinking, communicating, working, and    interacting with others.

152.    Plaintiff, by the reason of his disability, was denied on February 1, 2024, "reasonable accommodations and modifications," "meaningful access," and "full participation" in the benefits of programs, services, and activities provided by LPSF, an instrumentality of a public entity (City of Lawton).

    a)    Plaintiff requested reasonable accommodations to aid his disability during City programs, services, or activities (Municipal Court, Prosecutors Office, Jail, City Council Meeting) that are open to the public.

    b)    Plaintiff's requests for accommodation and modifications were denied in-person by City Prosecutor Alan Rosenbaum, Municipal Judge Nathan Johnson, Municipal Court Clerks Heather Moulton-Skiles, Sandra Carl, Jillian Allison, Municipal Correctional Officer Mark Floyd, and Mayor Stan Booker during the use of City services, programs, and activities.

    c)    As a result, Plaintiff suffered emotional distress, pain and suffering, humiliation and embarrassment.

    d)    Defendant were "deliberately indifferent" to Plaintiff's disability needs and acted with "reckless disregard" to rectify its policies under City Code Sections 20-1-103; 13-1-101; Amendment to Council Policy 1-6, Council Rules of Procedure and Administrative Policy 3-35 Employee or Applicant Request For ADA Accommodation that are use to justify Policymakers are complying with

**COUNT II:**
**VIOLATION of SECTION 504 of the REHABILITATION ACT of 1973:**
**29 U.S.C. § 794(a)**
**(Against All Lawton Policymakers And Defendants)**
*Andre Wilson v. City of Lawton*

153.    Plaintiff incorporates all allegations set forth above as if fully set forth herein.

154.    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), provides in

pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined
> in section 706(8) of this title, shall, solely by reason of her or his disability, be
> excluded from the participation in, be denied the benefits of, or be subjected to
> discrimination under any program or activity receiving Federal financial assistance.

a)    Defendants have discriminated against Plaintiffs on the basis of disability

in violation of 29 U.S.C. § 794 and its implementing regulations as more fully

described throughout the above complaint. Such discrimination includes but is

not limited to failure to provide reasonable modifications and accommodations.

b)    Defendants have not complied with their obligation under Section 504 of

the Rehabilitation Act of 1973 and Title II of the ADA.

c)    Defendants made a "conscious decision" to disregard adopting and

establishing Title II administrative regulations to ensure fair treatment for

Plaintiff and other individuals with disabilities.

d)    Defendant has acted with "deliberate indifference" to the strong likelihood

that pursuit of Defendant's questioned policies, and failure to provide

accommodations and modifications would likely result in a violation of federally

protected rights.

j)      Defendant did not exercise reasonable care as the City's conduct was

outrageous, indecent, atrocious, odious, uncivilized, or intolerable.

k)      Thereby, Plaintiff suffered severe emotional distress as a proximate result.

Plaintiff seeks damages, including for the extent of Plaintiff's injuries, pain and suffering,

emotional distress, as well as all available damages available under the law.

**WHEREFORE**, Plaintiff moves this Honorable Court to enter an Order of Judgment

against Defendant City of Lawton, and all Defendants, pursuant to 42 U.S.C. § 1983 and 42

U.S.C. §§ 12131-34, in an amount in excess of One Million Dollars (1,000,000.00) including

interest, delay damages, costs of suit, general and specific damages, including compensatory

and actual damages, punitive and exemplary damages against Defendants sued in their

individual capacity as provided by law, attorneys' fees, and to grant such other and further

relief as the Court may deem reasonable and just under the circumstances.

**COUNT III:**
**42 U.S.C. § 1983**
**Biased Law Enforcement and Prosecution—Unlawful Financial Interest in Violation of the
Fourteenth Amendment**
**(Against All Lawton Named Policymakers Supervisors And Law-enforcement)**
*Andre Wilson v. City of Lawton*

155.    Plaintiff incorporates all allegations set forth above as if fully set forth herein.

156.    In particular, this Count relies on the allegations that relate to the City of Lawton's

policing policies, practices, and customs and the City of Lawton's prosecution policies,

practices, and customs, including relevant information as detailed at paragraphs 1–30, 36–98,

and 104–128 above.

prosecute municipal-court violations to maximize or increase revenue, and without regard for the public interest and disability rights under the ADA, or individuals' constitutional rights.

163.    This financial interest is the result of and has given rise to City policies, practices, and customs that incentivize Lawton's City attorneys to pursue and obtain municipal-court convictions in a manner that disregards the stringent ethical and constitutional responsibilities of prosecutors and violates Title II of the ADA and individuals' constitutional rights.

164.    Because Lawton's policies, practices, and customs have created a situation where its law-enforcement and prosecutorial officials have a financial incentive to charge, convict, and fine defendants, those policies, practices, and customs violate the due process rights of Mr. Wilson, who have been subjected to charges issued under Lawton's profit-fueled policies, practices, and customs.

165.    Mr. Wilson is entitled to declaratory relief on the issue-certified question whether Lawton has or did have a policy, practice, or custom of enforcing municipal violations in a manner and pursuant to incentives that violate the Fourteenth Amendment's Due Process Clause. Separate from that issue-certified question, Mr. Wilson also is entitled to damages for injuries caused by Lawton's policy, practice, or custom of enforcing municipal violations in a manner and pursuant to incentives that violate the Fourteenth Amendment's Due Process Clause.

166.    Mr. Wilson is entitled to an injunction barring Lawton's municipal policy, practice, or custom of enforcing municipal violations in a manner that incentivizes or prioritizes the maximizing or increasing of revenue.

**COUNT IV:**
**42 U.S.C. § 1983**
**Unconstitutional Seizures in Violation of the Fourth and Fourteenth Amendments**
**(On behalf of Plaintiff Andre Wilson, individually, Against All Lawton Named**
**Policymakers Supervisors And Law-enforcement)**
*Andre Wilson v. City of Lawton*

167.    Plaintiff incorporates all allegations set forth above as if fully set forth herein.

168.    In particular, this Count relies on the allegations that relate to the Lawton police officers handcuffing of Pla who they "unexpectedly pursued, detained, arrested, and transported to jail", including as detailed at paragraphs 93–95, and 124–128 above.

a)    Defendants discriminated against Plaintiff on the basis of disability and race as there was no warrant presented or probable cause for seizing, detaining, arresting, and incarcerating Plaintiff.

b)    This Count is brought against LPD Officers Manual Martinez, Michael Albert, Caleb Swinford, and Mark Floyd for keeping Plaintiff handcuffed in violation of the Fourth Amendment and for seizing, detaining, and incarcerating Plaintiff in violation of the Fourth Amendment.

c)    Defendants made a "conscious decision" to disregard training, adopting and establishing Title II administrative regulations to ensure protection and fair treatment of individuals with disabilities and Plaintiff protected by the ADA.

d)    Defendants has acted with "deliberate indifference" to the strong likelihood that pursuit of Defendant's questioned policies, and failure to provide accommodations and modifications would likely result in a violation of federally protected rights.

against Defendant City of Lawton, and all Defendants, pursuant to 42 U.S.C. § 1983 and 42

U.S.C. §§ 12131-34, in an amount in excess of One Million Dollars (1,000,000.00) including

interest, delay damages, costs of suit, general and specific damages, including compensatory

and actual damages, punitive and exemplary damages against Defendants sued in their

individual capacity as provided by law, attorneys' fees, and to grant such other and further

relief as the Court may deem reasonable and just under the circumstances.

**COUNT V:**
**42 U.S.C. § 1983**
**Local Officials Violation of the First Amendment by Retaliating Against Disfavored Viewpoints**
**(On behalf of Plaintiff Andre Wilson, individually, Against The City of Lawton Named Policymakers And Mayor Stan Booker)**
*Andre Wilson v. City of Lawton*

169.    Plaintiff incorporates all allegations set forth above as if fully set forth herein.

170.    In particular, this Count relies on the allegations that relate to the City of Lawton

Policymakers and Mayor Stan Booker retaliating against Plaintiff's Speech, including as

detailed at paragraphs 1–26, and 129–148 above.

      a)    Defendants, in part, discriminated against Plaintiff on the basis of

disability and race as he is being deprived of the enjoyment of the fundamental

rights of citizens because of "Plaintiff's opinions on questions of public interest."

      b)    Defendants and Mayor Booker, acting under color of state law, continue to

subjects Plaintiff and other citizens 'to the deprivation of any rights, privileges, or

immunities secured by the Constitution.

including interest, delay damages, costs of suit, general and specific damages, including

compensatory and actual damages, punitive and exemplary damages against Defendants sued

in their individual capacity as provided by law, attorneys' fees, and to grant such other and

further relief as the Court may deem reasonable and just under the circumstances.

Respectfully submitted,

Andre Wilson Pro se  Signature _____

Date: August _19_, 2024

Contact Information:
210 NW Cherry Ave.
Cache OK 73527
803-807-0612
Email andrelwilson@outlook.com